UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

JERMAINE D. HUNTER,

                    Plaintiff,                    Case No. 1:15-cv-593

v.
                                          Honorable Gordon J. Quist

KENT CUSTIN et al.,

                    Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. §§ 1983,

1986 and state law.  The Court has granted Plaintiff leave to proceed *in forma pauperis*.  Under the

Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required

to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious,

fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant

immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must

read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and

accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton

v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Defendants

Custin, Prelesnik, Shaffer, Lauer, and Heffelbower.  The Court will serve the complaint against

Defendants Barnett, Meagher, Dusenbery, Lincoln, Smith, Gilkie, Thoma, and Rykses.

## Discussion

I.      Factual allegations

Plaintiff Jermaine D. Hunter is incarcerated by the Michigan Department of

Corrections (MDOC) at the Michigan Reformatory, though the events about which he complains

occurred while he was incarcerated at Richard A. Handlon Correctional Facility (MTU). He sues the following MDOC officials at MTU: Warden John Prelesnik; Deputy Warden Barbara Meagher; Inspector Kimberly Dusenbery; Transfer Coordinator Amy Shaffer; Grievance Coordinator C. Heffelbower; Resident Unit Manager (RUM) Margaret Lauer; Assistant Resident Unit Supervisor (ARUS) Gerald Gilkie; and Correctional Officers Robert Lincoln, William Thoma, (Unknown) Rykses, (Unknown) Barnett, and (Unknown) Smith. He also sues Kent Custin, a grievance specialist at the MDOC's central office in Lansing, Michigan. Plaintiff's complaint primarily concerns two separate issues: (1) the confiscation of his typewriter and (2) verbal and physical harassment by certain officers at MTU.

## A. Confiscation of Typewriter

According to the complaint, Plaintiff was transferred to MTU from Saginaw Correctional Facility (SRF) on January 12, 2012. The day before his transfer, an officer inspected Plaintiff's property (including his typewriter), and confirmed that it was not contraband. The next day, Officer Rievert, an SRF official against whom Plaintiff had filed many grievances, told Plaintiff, "Tell Thoma, I send my regards." (Compl., docket #1, Page ID#7.) When Plaintiff arrived at MTU, the property room officer, Defendant Thoma, confiscated Plaintiff's typewriter, stating, "It looks like another prisoner put Plaintiff's number in it with a pin." (*Id.*) Plaintiff explained that he obtained the typewriter while he was at a different facility, and that MDOC officials put his number on it. Thoma refused to listen, and refused to issue any documentation indicating that the typewriter had been confiscated, such as a Contraband Removal Record, a misconduct report, or a Notice of Intent to Conduct an Administrative Hearing (NOI). Thoma stated that he would send the appropriate documents to another officer, but he never did.

Several days later, when Plaintiff asked about his typewriter, ARUS Gilkie stated that he did not know about it. The next day, Plaintiff asked Thoma to speak with Gilkie about the

typewriter, but Thoma refused to do so. On January 26, Gilkie denied Plaintiff's requests for access to the typewriter, stating, "I don't have any paperwork to do anything." (*Id.* at Page ID#8.) Plaintiff told Gilkie that he would file a grievance about the issue. Gilkie "reacted vindictively" and denied Plaintiff's request to contact Thoma about the typewriter. (*Id.* at Page ID#9.) On January 30, Plaintiff filed a grievance against Thoma and Gilkie, claiming that they retaliated against him and conspired to improperly confiscate his typewriter.

Plaintiff asserts that Defendants Meagher and Heffelbower allowed Thoma to investigate this grievance, in violation of MDOC policy. Thoma allegedly confronted Plaintiff and admitted that he "unlawfully" confiscated the typewriter at the "behest" of Officer Rievert, and that he intentionally failed to issue any documentation about it. (*Id.*) Thoma offered to return the typewriter if Plaintiff would agree to "sign off" on the grievance. (*Id.*) Plaintiff refused to do so.

On February 7, Thoma responded to the grievance and claimed that the typewriter was being held in the property room until Plaintiff could provide a proof of purchase. He also indicated that he was resending a NOI to ARUS Gilkie. That same day, Officers Barnett and Thoma allegedly summoned Plaintiff to the officer's desk to review the NOI and to conduct an administrative hearing. Plaintiff refused to participate in a hearing because he had not received sufficient notice, Barnett did not have possession of the typewriter, and Barnett was not authorized to conduct an administrative hearing, per MDOC policy.[1] Nevertheless, Barnett allegedly prepared a report in which he recommended that the typewriter be destroyed. (*See* Notice of Intent to Conduct an Administrative Hearing, App'x C to Compl., docket #1-1, Page ID#46.)

The next day, Plaintiff complained about the hearing process to ARUS Gilkie, who confirmed that he had authorized Barnett to conduct a hearing. Plaintiff indicated that he intended

---

[1] Plaintiff asserts that Officer Barnett was not authorized to conduct the hearing because he was not a RUM, ARUS or Sergeant.

to file a grievance about the issue. Gilkie "reacted vindictively," tore up the report prepared by Officer Barnett, and fabricated a new report which recommended that the typewriter be sent to Plaintiff's home, at Plaintiff's expense. (Compl., Page ID#11.) Plaintiff filed a grievance complaining that Gilkie, Barnett and Thoma were conspiring to retaliate against him.

Officer Thoma responded to the grievance filed against him and Gilkie on January 30, and claimed that the typewriter was being held in the property room because Plaintiff had not provided proof that he owned it. Sergeant Foldie investigated the grievance and told Plaintiff that his typewriter was properly numbered and that she could not find any alterations on it. She advised Plaintiff to appeal his grievance to the next step. Plaintiff did so, but Warden Prelesnik denied the appeal, acknowledging that "staff may have been lengthy in processing paperwork" and that "staff involved in the grievance answered the grievance," but finding that "[t]he typewriter does appear to be altered and you cannot show proof of ownership." (Second Step Grievance Response, App'x B to Compl., docket #1-1, Page ID#43.) Plaintiff appealed this decision to step III of the process, but his appeal was denied by Defendant Custin on June 14, 2012.

RUM Lauer responded to the grievance filed on February 8. He determined that ARUS Gilkie made his decision at the administrative hearing without actually viewing the typewriter; instead, Gilkie relied on the statement of the property room officer. (*See* Step I Grievance Response, App'x E to Compl., docket #1-1, Page ID#51.) However, Lauer looked at the typewriter and determined that the property room officers "were correct about the numbers being sanded off and renumbered." (*Id.*) Lauer also determined that Officer Barnett did not conduct the administrative hearing; instead, Barnett reviewed the NOI with Plaintiff. Lauer concluded that the typewriter should not be returned to Plaintiff because he had not shown proof of ownership. (*Id.*) Plaintiff appealed this decision, but Warden Prelesnik denied the appeal, concluding that the typewriter appeared to be altered and that Plaintiff could not show proof of ownership. Plaintiff

appealed this decision to step III of the process, and his appeal was denied by Defendant Custin on June 25, 2012.

While his grievance appeals were pending, Plaintiff was transferred to Ionia Correctional Facility (ICF) on March 23, 2012. Upon arrival at ICF, the property room officer told Plaintiff that he had been contacted by Sgt. Foldie about the typewriter. Foldie spoke with the RUM at ICF, who investigated Plaintiff's ownership of the typewriter and was able to confirm that Plaintiff lawfully acquired the typewriter while he was incarcerated at a different facility. Prison officials at ICF subsequently returned the typewriter to Plaintiff.

### B. Harassment

"[A]lmost immediately" after Plaintiff filed his first grievance at MTU about the confiscation of his typewriter, Officer Lincoln began to harass Plaintiff by conducting random pat-down searches. (Compl., Page ID#14.) On February 6, 2012, as Plaintiff was on his way to dinner, Officer Lincoln confronted him and said, "Hunter, get your ass over here - asshole, shakedown." (*Id.* at Page ID#15.) Plaintiff complied, but the search lasted for 15 minutes. During that time, Lincoln spoke to Plaintiff using "demeaning language" and engaged in "prolonged rubbing and fondling of Plaintiff's genitals." (*Id.*) Plaintiff threatened to file a grievance against him for sexual assault, and Lincoln "reacted vindictively by getting up in Plaintiff's face with his first clenched, as if he was about to strike Plaintiff," and stating, "I got a hard on for you anyways asshole - what you wanna do, you wanna see me. I'll beat your ass." (*Id.*)

On February 12, when Plaintiff was walking to the recreation yard, Lincoln said to him, "Hey you asshole, get your ass over here and give me . . . your I.D." (*Id.*) Plaintiff told him that his name was not "asshole" and said, "Talk to me with respect. I'm not one of these little kids around here." (*Id.* at Page ID#16.) Lincoln replied, "I didn't know your name, so I called you asshole, what you gonna do, file another grievance." (*Id.*) Plaintiff shook his head. Lincoln then

- 5 -

"[got] up in Plaintiff's face with his fist clenched, as if he was about to strike Plaintiff," and he stated, "What you wanna do. You wanna see me or something." (*Id.*) Plaintiff turned and walked away. As he did so, Lincoln raised his hands in the air and said, "I didn't think so. I knew you didn't wanna do shit. That's right, take your ass back to your unit." (*Id.*) Later that day, Plaintiff filed a grievance against Lincoln.

The next day, Plaintiff told ARUS Gilkie about Lincoln's "ongoing harassment" and indicated his fear that Lincoln would assault him. Gilkie refused to do anything about it at the time, but told Plaintiff to file a grievance on Lincoln. (*Id.* at Page ID#17.)

On February 14, as Plaintiff was walking to the recreation yard, Lincoln singled him out and demanded that he submit to a pat-down search. During the search, Lincoln put his hands between Plaintiff's legs and thrust it upward, deliberately slamming it into Plaintiff's genitals. Plaintiff exclaimed and bent forward in pain. Lincoln told him to turn around and keep his arms up. The search lasted for 12 minutes. After the search ended, Plaintiff decided to return to his cell because he was feeling "sharp, severe . . . pain" in his genitals and lower abdomen. (*Id.* at Page ID#18.) Sometime later, he noticed blood in his urine. He sought medical attention and was given Motrin tablets for the pain. Plaintiff subsequently filed a grievance about Lincoln's actions.

On February 15, Plaintiff told Officer Rykses about Officer Lincoln's conduct and asked Rykses to check the video footage, ostensibly to confirm Plaintiff's concerns. Rykses indicated that he was aware of many prisoner complaints about Officer Lincoln's sexually-abusive searches, but insisted that Plaintiff "sign off" on his grievances against Lincoln so that Rykses could speak to Lincoln. (*Id.*) Plaintiff refused to do so. Rykses became "visibly angry" and failed to document Plaintiff's complaints of sexual abuse or report them to supervisory staff.

On February 22, Plaintiff was called to Inspector Dusenbery's office to be interviewed about the conduct by Lincoln on February 14, which Plaintiff had described in his

grievance. On the way to Dusenbery's office, Plaintiff passed by Deputy Warden Meagher and reiterated his concerns about "ongoing abusive conduct" by Officer Lincoln. Meagher promised to look into them, but Plaintiff alleges that Meagher never did. Inspector Dusenbery subsequently met with Plaintiff and told him, "I caution you. Be careful!" (*Id.* at Page ID#19.) Dusenbery tried to have Plaintiff accept the February 14 incident as "just a shake down [that] he didn't like." (*Id.*) Plaintiff refused to do so. Dusenbery did not look at the security video footage of the incident and "threatened" the other prisoner who observed it. (*Id.* at Page ID#20.) Dusenbery also failed to report the incident to the police as required by MDOC policy. Plaintiff claims that she wanted to protect Lincoln from disciplinary action. Plaintiff filed a grievance against her for retaliating against him and for threatening and intimidating him to sign off on the grievance against Lincoln.

On February 27, as Plaintiff entered the field house building, Officer Lincoln "singled Plaintiff out" to Officer Smith as the prisoner responsible for the sexual assault investigation. Thereafter, Smith began "stalking" Plaintiff. (*Id.*) When the field house closed, Smith followed Plaintiff back to his housing unit. Smith kicked the door of Plaintiff's cell open, "approached Plaintiff in a threatening and intimidating manner" and "forcibly took charge" of Plaintiff's television. (*Id.* at Page ID#21.) Plaintiff stated that he did not feel comfortable with Smith in the room. Smith told him, "You don't feel comfortable, good. Welcome to MTU." (*Id.*) Plaintiff claims that, as a yard officer, Smith did not have authorization to be in Plaintiff's cell. Plaintiff filed a grievance against Smith for retaliation and for threatening and intimidating conduct.

On March 9, Sergeant Rykses summoned Plaintiff to the officers' desk and "aggressively confronted" him about the grievance against Officer Smith. (*Id.*) Rykses asked Plaintiff to "sign off" on the grievance, but Plaintiff refused. (*Id.*) Rykses then told three other officers nearby, "That dickhead . . . is filing all these grievances around here, and not signing off." (*Id.* at Page ID#22.) The next day, Plaintiff filed a grievance against Rykses.

On March 15, while Plaintiff was in his cell, Officer Smith entered Plaintiff's unit and came to the doorway of Plaintiff's cell on four occasions to "mean mug" him for a few minutes at a time. (*Id.*) Plaintiff went to Gilkie and told him about it. Gilkie stated that Smith was not supposed to be in Plaintiff's unit, but that Gilkie would deal with it. (*Id.*) That evening, however, Smith came to Plaintiff's cell again and told him, "We got you." (*Id.* at Page ID#23.) Ten minutes later, Smith summoned Plaintiff to the officers' desk. As soon as Plaintiff left his cell, he saw Officer Lincoln standing in the hallway, in Plaintiff's path. Lincoln stated, "Shakedown asshole." (*Id.*) Lincoln then put his hands between Plaintiff's thighs, grabbed his genitals in a "sexually aggressive" manner, and squeezed them, causing severe pain. (*Id.*) While Lincoln continued to hold Plaintiff's genitals in his hand, he stated, "Whose are these, because you don't have any little bitch. Your pussy-ass would rather file a grievance." (*Id.*) The search lasted for approximately 15 minutes. After the incident, Petitioner filed an "emergency" grievance about it with Inspector Dusenbery.[2] Dusenbery allegedly refused or failed to process the grievance. Instead, she turned it over to ARUS Gilkie.

When Gilkie returned to work on March 19, he summoned Plaintiff to his office. He confronted Plaintiff about the grievance against Lincoln, stating, "What is this. You got muthafucka's confronting me about what[']s going on in my unit, like I condone this shit. . . . You could've gave me a heads up first." (*Id.* at Page ID#24.) Gilkie told him to "take this grievance and get . . . out of my office now." (*Id.*) Later that day, Plaintiff refiled his "emergency" grievance with Grievance Coordinator Heffelbower. (*Id.*) He also filed a grievance against Inspector Dusenbery and ARUS Gilkie for "corruption," "retaliation," and "conspiracy to impede the administrative grievance process[.]" (*Id.* at Page ID#25.) Heffelbower allegedly refused and/or failed to process these grievances.

---

[2] A prisoner alleging staff sexual misconduct may file a grievance with the inspector at the facility instead of the grievance coordinator. MDOC Policy Directive 03.02.130 ¶ Q (July 9, 2007).

On March 21, a prisoner who was mentioned in one of Plaintiff's grievances as a witness to the March 15 assault by Lincoln was subjected to a "pretextual" cell search and transferred to another housing unit. (*Id.*)

On March 22, ARUS Gilkie came to Plaintiff's cell, gave him six "unrelated Step 2 grievances," and told him, "You just keep it coming don't you. One grievance after the other. That[']s why SRF got rid of you. . . . I'm gone [sic] do you, me and everybody else a favor." (*Id.*) The following day, Plaintiff was transferred to ICF. Plaintiff asserts that he was on a list to be transferred "down state" to "Ryan, Mound and/or Thumb Correctional Facility" at the time. (*Id.* at Page ID#26.) However, Dusenbery, Gilkie, Lincoln and Smith allegedly persuaded Shaffer, Deputy Warden Meagher, and RUM Lauer to transfer Plaintiff to ICF. Plaintiff subsequently filed a grievance against Defendants Prelesnik, Meagher, Shaffer, Lauer, and Gilkie for transferring Plaintiff in retaliation for filing grievances.

On March 27, ARUS Snyder summoned Plaintiff to her office to ask him about what she referred to as "the suspicious circumstances surrounding his transfer to ICF, without proper authorization." (*Id.* at Page ID##26-27.) According to Snyder, officials at MTU failed to prepare a transfer screen or a transfer order, as required by MDOC policy.

Thereafter, Plaintiff sent several inquiries to Grievance Coordinator Heffelbower about the two grievances that he filed on March 19 against Defendants Dusenbery, Gilkie, Lincoln, and Smith. Heffelbower did not respond to his inquiries.

Plaintiff contends that he suffered emotional distress as a result of the foregoing events. In addition, the physical assaults by Officer Lincoln caused him to suffer significant pain in his genitals and lower abdomen, some of which is ongoing. Plaintiff claims that Defendants have violated his rights under the constitution and state law.

II. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

A.  42 U.S.C. § 1986

Plaintiff alleges that Defendants conspired to deprive him of his constitutional rights, ostensibly in violation of 42 U.S.C. § 1986. Section 1986 imposes liability on persons who are aware of and can prevent violations of 42 U.S.C. § 1985. In order to show a violation of § 1986, the plaintiff must prove a valid claim under 42 U.S.C. § 1985. *See Radvansky v. City of Olmsted Falls*,

395 F.3d 291, 314-15 (6th Cir. 2005). To maintain a cause of action under 42 U.S.C. § 1985(3), a plaintiff must establish the following four elements: (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *See Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)). The plaintiff further must demonstrate that the conspiracy was motivated by a class-based animus, such as race. *Johnson*, 40 F.3d at 839. In addition, "[c]onspiracy claims, even those brought via § 1985, must be pleaded with specificity." *Perry v. Se. Boll Weevil Eradication Found., Inc.*, 154 F. App'x 467, 477 (6th Cir. 2005). Plaintiff has not alleged any facts to support the existence of a conspiracy motivated by racial or class-based animus. Because he does not state a valid claim under § 1985, Plaintiff cannot maintain a claim under § 1986. Thus, Plaintiff's claim under § 1986 will be dismissed.

## B. 42 U.S.C. § 1983

To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### 1. Grievance Specialist Custin

Plaintiff's only allegation against Defendant Custin is that he denied several of Plaintiff's grievances at Step III of the grievance appeal process. The Sixth Circuit has held that where the defendant's only involvement in allegedly unconstitutional conduct is "the denial of

administrative grievances or the failure to act," the defendant cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Liability under § 1983 requires active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Denying an administrative grievance does not suffice. *Shehee*, 199 F.3d at 300.

Furthermore, prisoners do not have a due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002). Thus, failing to give a prisoner relief through the grievance process does not amount to a constitutional violation. Consequently, Plaintiff does not state a § 1983 claim against Defendant Custin.

### 2. Warden Prelesnik

Plaintiff alleges that Defendant Prelesnik denied several grievances at Step II of the grievance appeal process and approved the prison transfer which moved Plaintiff from MTU to ICF. For the reasons already stated with respect to Defendant Custin, Prelesnik's conduct in connection with the grievance process does not state a claim under § 1983. Furthermore, to the extent that Prelesnik was involved in the prison transfer, Plaintiff does not state a claim because he does not have a constitutional right to be incarcerated in a particular facility. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976).

Plaintiff claims that the transfer was an act of retaliation for filing grievances, but his allegations do not suffice to state such a claim. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must

establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

An ordinary prison transfer does not satisfy the adverse-action element of a retaliation claim. "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005); *Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003) ("We have repeatedly held that transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights"). (internal quotation marks omitted). If, however, there are foreseeable adverse consequences to a transfer, then it might be considered an "adverse action" that would deter a person of ordinary firmness from continuing to engage in the protected conduct. *See Siggers-El*, 412 F.3d at 702 (holding that a transfer was an "adverse action," where the transfer resulted in plaintiff losing a high paying job that paid for his lawyer fees and moved him further from his attorney).

In this case, Plaintiff was transferred from a level II facility to a level II and V facility.[3] He does not allege that his security classification or his conditions of confinement changed as a result of his transfer. Nor does he allege any other adverse consequences resulting from the transfer. Indeed, the transfer was arguably a benefit for Plaintiff in that it moved him away from

---

[3] *See* MDOC Prison Directory, http://michigan.gov/corrections/0,4551,7-119-68854_1381_1385---,00.html (visited July 13, 2015). In the MDOC, security classifications from least to most secure are as follows: Levels I, II, IV, V, and administrative segregation. MDOC Policy Directive 05.01.130 ¶ B (Oct. 10, 2011).

officers who were mistreating him. Thus, the prison transfer does not give rise to a retaliation claim against Prelesnik, or any other Defendant.

Finally, Prelesnik may not be held liable for the unconstitutional conduct of his subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Prelesnik engaged in any active unconstitutional behavior. Accordingly, Plaintiff fails to state a claim against him under § 1983.

### 3. Transfer Coordinator Shaffer

Defendant Shaffer allegedly conspired with other prison officials to transfer Plaintiff from MTU to ICF in retaliation for Plaintiff's many grievances, which does not state a claim for the reasons discussed with respect to Defendant Prelesnik. Consequently, Plaintiff does not state a claim under § 1983 against Defendant Shaffer.

### 4. Deputy Warden Meagher

Defendant Meagher allegedly failed to investigate Plaintiff's concerns about Officer Lincoln's abusive conduct. In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, Plaintiff must show that Defendant acted with "deliberate indifference" to a substantial risk that Defendant Lincoln would cause serious harm to Plaintiff. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993). Deliberate indifference

encompasses both a subjective and an objective component. The objective component requires that the deprivation alleged be "sufficiently serious." *Farmer*, 511 U.S. at 834. Thus, "for a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* To satisfy the subjective component, a plaintiff must show that the defendant had "a sufficiently culpable state of mind," one in which "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prison official can be liable if he "disregards that risk by failing to take reasonable measures to abate it." *Id.* at 848.

At this stage of the proceedings, the Court concludes that Plaintiff states an Eighth Amendment claim against Defendant Meagher.

### 5. Inspector Dusenbery

Plaintiff contends that Dusenbery intimidated him and threatened him in order to have him sign off on a grievance, stating, "I caution you. Be careful!" (Compl., Page ID#19.) Dusenbery also refused or failed to conduct a full investigation into Plaintiff's complaint that Lincoln assaulted him on February 14, 2012. Dusenbery allegedly threatened a witness to the assault, and did not review the security video of the incident or report Lincoln's conduct to the police. In addition, Dusenbery refused to process a grievance that Plaintiff filed about the assault by Officer Lincoln on March 15, 2012. Plaintiff's allegations arguably suffice to state an Eighth Amendment and/or retaliation claim against Dusenbery.

### 6. RUM Lauer

Defendant Lauer allegedly responded to one of Plaintiff's grievances regarding the typewriter and determined that the typewriter should not be returned to Plaintiff, despite the fact that the hearing officer never looked at the typewriter before determining whether it was contraband.

As explained with respect to Defendant Prelesnik, Defendant Lauer's failure to correct the actions of other officers when responding to a prison grievance does not give rise to liability under § 1983. Moreover, Plaintiff does not have a constitutional right to an effective grievance procedure; thus, Defendant Lauer's actions in connection with that procedure did not deprive Plaintiff of any constitutional rights.

Plaintiff contends that Officer Lauer acted in concert with other Defendants, including Defendants Barnett, Gilkie and Thoma, to punish Plaintiff for filing grievances. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). Plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive Plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to Plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, Plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one).

Plaintiff's allegations of a conspiracy involving Lauer are wholly conclusory. They do not contain "enough factual matter (taken as true) to suggest that an agreement was made" to retaliate against Plaintiff. *Twombly*, 550 U.S. at 556. Thus, Plaintiff does not state a claim under § 1983 against Officer Lauer.

### 7. Officer Thoma

Defendant Thoma allegedly confiscated Plaintiff's typewriter without issuing any documentation. After Plaintiff filed a grievance about the issue, Thoma issued a NOI to confiscate

the typewriter, Officer Barnett conducted a hearing on the NOI in violation of MDOC policy, and then ARUS Gilkie fabricated a hearing report with a determination to have the typewriter sent out of the facility at Plaintiff's expense.

To the extent Plaintiff claims that he was deprived of his property without due process, his claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon improper and unauthorized acts of state officials, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process claim. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not, and cannot, sustain his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Indeed, numerous state post-deprivation remedies were available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and

any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for a prisoner's deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Thus, he does not state a due process claim.

Plaintiff asserts that Thoma's decision to confiscate the typewriter without issuing documentation was motivated by Plaintiff's protected conduct. Thoma allegedly admitted that he confiscated the typewriter unlawfully at the request of Officer Rievert, an official whom Plaintiff had filed many grievances against. At this stage of the proceedings, the Court finds that these allegations are sufficient to state a retaliation claim against Thoma.

### 8.  Officer Barnett

Plaintiff alleges that Officers Barnett and Thoma summoned Plaintiff to the officers' desk in order to conduct an improper administrative hearing regarding the status of the typewriter. Officer Gilkie allegedly authorized Barnett to conduct the hearing, even though Barnett could not do so under MDOC policy. At the hearing, Barnett allegedly determined that the typewriter should be destroyed. Plaintiff contends that Officer Barnett was acting in concert with Officers Thoma and Gilkie to retaliate against Plaintiff. At this stage of the proceedings, the Court finds that Plaintiff has stated a possible retaliation claim against Barnett.

### 9.  ARUS Gilkie

Defendant Gilkie allegedly denied Plaintiff's request to access his typewriter, denied Plaintiff's request to contact Officer Thoma about the typewriter, improperly permitted Officer Barnett to conduct an administrative hearing regarding Plaintiff's ownership of the typewriter, and then fabricated a hearing report which recommended that the typewriter be sent out of the facility

to Plaintiff's home after Plaintiff threatened to file a grievance about Officer Barnett's actions. The foregoing facts suffice to state a retaliation claim against Defendant Gilkie.

In addition, Plaintiff alleges that he told Gilkie about Lincoln's harassing behavior, and Gilkie did nothing about it. Later, Lincoln assaulted Plaintiff. These allegations are sufficient to state an Eighth Amendment claim against Defendant Gilkie.

### 10. Grievance Coordinator Heffelbower

Plaintiff contends that Defendant Heffelbower refused or failed to process certain grievances, including a grievance regarding Defendant Lincoln's assault. These allegations do not state a claim. As indicated above, Plaintiff does not have a constitutional right to an effective grievance procedure, and Heffelbower cannot be held liable for the unconstitutional conduct of other officers or for failing to correct them in response to Plaintiff's grievances. *See Shehee*, 199 F.3d at 300. To the extent Plaintiff contends that Heffelbower was deliberately indifferent to Plaintiff's health or safety, he does not state a claim. As grievance coordinator, Heffelbower was not responsible for Plaintiff's conditions of confinement. Plaintiff's concerns about physical safety were properly addressed to the officials in his unit; he did not need to file a grievance in order to raise them. Thus, Plaintiff does not state an Eighth Amendment claim against Heffelbower. *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (failure to process grievances, without more, is not actionable under § 1983).

Plaintiff contends that Heffelbower's actions were acts of retaliation. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting

*Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)). In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Plaintiff merely alleges the ultimate fact of retaliation. He alleges no facts from which to reasonably infer that Heffelbower's actions were motivated by his protected conduct. He merely concludes that because he filed some grievances within a few days, weeks or months before Defendant's actions, they must have been motivated by his grievances. The Sixth Circuit, however, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010). This is especially true where, as here, the plaintiff is a prolific filer of grievances. *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews"). Thus, Plaintiff does not state a § 1983 claim against Defendant Heffelbower.

### 11. Officer Rykses

Defendant Rykses allegedly failed to take action in response to Plaintiff's concerns about Officer Lincoln, even though Rykses was aware of other instances in which Lincoln had assaulted other prisoners. These allegations suffice to state a claim against him.

### 12. Officers Lincoln and Smith

According to Plaintiff, Officer Lincoln physically harassed him on several occasions, ostensibly in retaliation for Plaintiff's grievances. Officer Smith participated in one of those

incidents by summoning Plaintiff out of his cell to be harassed by Officer Lincoln. The Court concludes that these allegations state a claim under § 1983 against Defendants Lincoln and Smith.

III. Supplemental Jurisdiction

The Court has determined that the federal claims against Defendants Custin, Prelesnik, Shaffer, Lauer, and Heffelbower will be dismissed. To the extent that Plaintiff states any claims against these defendants under state law, the Court declines to exercise its supplemental jurisdiction over such claims. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). Consequently, the Court will dismiss such claims without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff fails to state a claim under 42 U.S.C. § 1996. In addition, Plaintiff fails to state a violation of due process, or any other claim under 42 U.S.C. § 1983 against Defendants Custin, Prelesnik, Shaffer, Lauer, and Heffelbower. Thus, the federal claims against these Defendants will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), and the claims against them under state law will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

As for the remaining Defendants, the Court concludes that Plaintiff states a possible retaliation claim and/or Eighth Amendment claim against them pursuant to § 1983. Thus, the Court will serve the complaint against Defendants Barnett, Meagher, Dusenbery, Lincoln, Smith, Gilkie, Thoma, and Rykses.

An Order consistent with this Opinion will be entered.

Dated: December 10, 2015                    /s/ Gordon J. Quist
                                        GORDON J. QUIST
                                   UNITED STATES DISTRICT JUDGE